Good morning, everyone. Our first case for argument this morning is United States v. Demaine Glenn. Mr. Drysdale. Thank you, Your Honor. May it please the Court. Tom Drysdale from the Federal Defender's Office on behalf of the appellant Demaine Glenn. Mr. Glenn was charged as a felon in possession of a firearm and received a sentence that exceeded the top end of the applicable guideline range by nearly three years. That sentence relies on a burglary conviction that had already received a seven-year prison sentence in state court and fleeing and eluding conduct from this case that had already been punished by both the state and the guidelines. The overall question here is whether this is a substantively reasonable sentence handed down by the district court. So I think what's important to note here is that every single sentencing argument was decided against Mr. Glenn. The district judge increased his guideline range, not actually, but said he should be treated as somebody who had a crime of violence in his past even though he did not under the guidelines. And then the court decided to go to the upper end of that range, primarily based not only on the fact that the conduct in this case was above average and not adequately captured by the guideline range. That's pretty much exactly what the district court said. So are you objecting to the fact that the district court calculated the guidelines and then in applying the 3553A factors by analogy looked at what the guideline calculation would look like with this enhancement? Is that your opinion? Or do you think that the reason for the enhancement was wrong? I think our argument, Your Honor, is as a collective that the district judge looked to that application note. We don't think that application note specifically applies, but even assuming he can look to that application note under a different 3553A factor, then he puts him up at 57 to 71 months and then he says I'm not giving you any credit for the 20 months you've already spent in state custody on this fleeing and eluding charge. And then he says I'm going all the way up to that 71 months, the upper end of that enhanced guideline, because of your fleeing and eluding conduct that put people at risk that isn't adequately captured here. So you agree, and I want to make sure I understand this because I thought you were arguing something else in your brief. You agree that the judge here did not depart from the 3553A factors and looked at an analogy of what the guidelines would look like with this other enhancement, but ultimately used the 3553A factors to come to the sentence. Yes, Your Honor. I believe that's what the record supports. That's what the district judge did here, and again the overall question here is not whether each of these decisions that the district judge made are reasonable. It's whether this entire sentencing package is substantively unreasonable. And so the district judge has to explain in particular on the fleeing and eluding. So no procedural error argument. I'm sorry to interrupt you. No procedural error argument at all. It's all under the umbrella of substantive? I think that's the appropriate context to look at this, Your Honor. And really, I think the biggest problem with this sentence is that the district judge said, well I'm not going to give you the 20 months on the fleeing and eluding conduct because this is such egregious fleeing and eluding. And in fact, he says, I'm going to, the guideline range does not account for this conduct. That's his exact quote at 45 of the transcript, but that's just simply untrue. He got a plus two on his base offense level under 3C1.2. That guideline is specifically designed for fleeing and eluding and the harm that's created while someone is fleeing and eluding. Yeah, let me ask you this, Mr. Arndt. When I read the sentencing transcript, I was also of the view that the district court was troubled by what preceded the fleeing and eluding, and that was that there were shots fired from the car. That's mentioned, Your Honor, yes. But he also goes on, he does say that there was shots fired, shooting at another vehicle. And then he says the fleeing and eluding conduct that put people at risk as well, including innocent people that might have been crossing the street, stopped at a red light. So he's enhancing that sentence from 57 all the way up to 71 months. That's part of his justification within that guideline range that he's using by saying the fleeing and eluding conduct just isn't captured under the guideline. Was that part of the, was that part of the enhancement though? Or was that the reason why he wasn't giving credit for 20 months? It's both. Because the court, at the end of what you just quoted, goes on to say the conduct simply doesn't warrant a variance of the 20 months. You're right, Your Honor. So he does it two different times. On 44 to 45, he talks about the factors not being under the variance argument. But then if you go over to page 47 of the transcript, he does it again when he's justifying the ultimate sentence that he basically says this is some kind of abnormal fleeing and eluding, essentially, I think is what he's getting at here. And he does it to justify not giving us the 20-month variance. And then he does it again to justify this upper end of the enhanced guideline sentence. It's a mistake to refer to this as an enhanced guideline sentence because it's not. The judge didn't apply enhancements. I'm sorry, Your Honor, I misspoke. The guideline range that the district judge says he should be treated as. This is just a non-guideline sentence. It is. And we get into a lot of needless ambiguity by trying to key non-guideline sentences to enhancements and application notes and that sort of thing. You're right, Your Honor. The question still is whether this is a reasonable sentence and whether the district judge explained his reasons for the sentence that he gave here. Right, and the judge clearly explained the reasons. He was concerned about the aggravated nature of the fleeing that preceded and was part of the offense conduct in the felon in possession charge. And he was concerned about the aggravated nature of the burglary conviction in the defendant's criminal history. So we have an adequate and robust explanation for the above guideline sentence. And if the above guideline sentence on its own stands as reasonable, then to fight about references to application notes and enhancements that weren't applied here is needless argument. Well, Your Honor, I disagree that there's an adequate explanation, at least on the fleeing and eluding charge, because he's saying, well, this conduct hasn't been accounted for yet. And because he put people in danger and because he was running stoplights and things like that. But that's exactly what 3C1.2 is designed to do. He already had that enhancement. It had been accounted for. And then he uses it to justify going even higher. Well, he hadn't. There was an enhancement of the guidelines range for the fleeing, but the judge was saying it didn't account for the aggravated nature of this fleeing. This is a 90 miles an hour chase. Your Honor, the 3C1.2 says that the whole point of that enhancement is to account for the substantial risk of harm caused by the fleeing. Of a generic fleeing. This is a non-generic fleeing. That was the whole point of the judge's discussion of the aggravated nature of it. And not all fleeings are the same. And the application or the guidelines enhancement doesn't capture all the same, Your Honor. I just don't see anything aggravating about this one, particularly when the PSR indicates that that's just a disagreement with the judge's rationale. But we're also omitting what happened before the fleeing. He's convicted of a felon in possession offense. The underlying gun was used to shoot at another car. I mean, that bothered Judge Shadid. It did, Your Honor. I recognize that. We just are looking at the judge basically saying that this conduct had not been captured when we believe it already had. And the court has no other questions. I'll save my remaining time. Thank you. Thank you, Mr. Keenstra. May it please the court. Good morning, Your Honor. Jeff Keenstra for the jury. In imposing a sentence here, the district court reasonably looked to the violence and danger inherent in both the defendant's prior offense and his current one. And for both those reasons found that a sentence above the guidelines range was the appropriate sentence in this case. As Your Honors have noted, this was not a mine run case in any respect, beginning with the defendant's prior burglary conviction, which was in fact a home invasion. The district court reasonably treated that for what it was, which was a violence crime. And then it looked by analogy, which the defendant has now conceded this morning, to the range that would correspond with that if the guidelines did likewise. As the guidelines recognize, a person's willingness to use violence makes their unlawful possession of a firearm all the more serious. And that's exactly what the defendant did here, both in his current and prior offenses. His prior offense was a violent home invasion, showing a willingness to commit offense involving violence. And here, as Your Honor noted, he didn't just possess a firearm. He actually shot it seven times at another car on a public road. So this was a very aggravated version of a felony possession offense. And I think that's equally true as to the defendant's fleeing. As I read the transcripts, the court's primary point wasn't that the guidelines don't account for the fleeing at all. It was that the guidelines account for more than the state offense counts for. So the fact that he's received a two-level enhancement here is appropriate, notwithstanding the 20 months he served on the state offenses, because the federal conducts before the relevant conduct before the federal court goes over and above what was necessary for the state offenses. And then even then, as Your Honor noted, in the realm of reckless endangerment enhancements, this was not a mine run offense. That was also in response to the defendant's argument at sentencing, wasn't it, that he should get credit for the 20 months that he had already served for the Illinois and Iowa state convictions for eluding? Exactly. And so the government's response to that below was basically that the guidelines require fleeing and eluding plus. So the fleeing and eluding was necessary, but on top of that, they accounted for the danger. And that's why it was appropriate for the federal sentence to result in additional time over and above what he had received in state court, instead of subtracting the state sentence out in the back end, essentially. And I think it's worth noting as to the the reckless endangerment, the circumstances there. He's fleeing from a shooting, first of all, driving at excessive speeds, running through stoplights and stop signs, turning his lights off at night to avoid being seen, and of course if he's not going to be seen by officers, he's not going to be seen by other motorists, including potentially people driving through intersections. And this all ended when he crashed with two other people in his car in a residential neighborhood. So this is a very aggravated version of reckless endangerment, and especially compared to an ordinary fleeing and eluding. Was that gun found in the car? The gun was found outside of the car near where the defendant had fled. Yeah, yeah, that's right, okay. Another gun was found in a neighbor's garden, which is how they came back to the scene and looked around. And last, I just note that the court did consider all the factors in combination. It wasn't looking at them in isolation, and frankly the reason that it resolved all the issues against the defendant was because that's the way all the factors pointed here. What about the judge's treatment of the burglary? That's part of the argument, too. Sure, and so basically the the court looks by analogy to to the guidelines range, and it properly viewed that this was a very It wasn't just entering a building with an intent to commit a felony. It was a home invasion where he and another individual beat a woman inside her house, dragged her upstairs, confined her in a room, threatened to kill her if she didn't give them money. Yeah, I don't think the argument attacks the judge's evaluation of the severity of the burglary. I think it's keyed to the judge's treatment of it as a basis for using a different guidelines range by analogy, I guess. I don't know that the judge used that word, but that's how the rationale is being characterized. And my reading of the transcript suggests that your colleague in your office who actually did the sentencing argument for the government invited an error on this score by asking the judge to treat the burglary as a crime of violence and then recalculate the range, not for purposes of the correct guidelines range, but for purposes of exercising 3553A discretion. So your colleagues said, don't treat this like a crime of violence, but you should treat it like a crime of violence, and the range would therefore be 51 to 71 months if the court were to treat it as a crime of violence. So we invite you to do that, Judge. Why argue a case like that? You just invite this kind of appellate argument. Yeah, so I think the idea of a departure analysis, there's some ambiguity there, and it does have the potential of inviting confusion. Although, as this court has noted in Ramirez, that the courts can look to departure provisions for guidance. And of course, departure provisions as policy factors. So there's nothing wrong with parties and courts looking to them by analogy. And the government, I think, made very clear that it was agreeing that the guidelines range was correct. I think it said that multiple times. And it also said that in the colloquy after the parties presented their argument, the court had some follow-up questions. And the government said that even if there is some question as to the departure provisions literal application here, that the court can still consider it as part of the 3553A factors. And that's exactly what the court did. So as Your Honor correctly notes, it wasn't necessary for the court to frame it through an analogy to the guidelines. It could have just said the defendant's willingness to commit violence, as shown by his prior offense, is aggravating. And I find that warrants a sentence above the guidelines. Or, I mean, courts don't have to frame variances by reference to the guidelines in the first place. But the court, I think, very clearly correctly recognized its discretion, framed this as a 3553A discussion. I think that the government did likewise. But to the extent there's confusion, courts are entitled to look by analogy to the guidelines. And that can be a useful way to frame issues in some circumstances. Mr. Canastro, let me run a different perspective by you. I thought this is what Mr. Dreisel may be arguing, but he seems to walk back a little bit the procedural error argument in the briefs. What you just said is correct, but it's a bit of window dressing. I don't mean that harshly. I just mean that, as a functional matter, what happened here is, you're right that on the fringes there's the 30 to 37 month finding. No question about it. We can both point to it. Okay, but for all practical purposes, the range was moved up. And, you know, as a functional matter, just looking at what happened here. And then once it was bumped up from 57 to 71, then the 3553 kind of kicked in. I kind of took that away from Mr. Dreisel's brief. And so, for all practical purposes, the advisory range was 57 to 71. Why is that a mistaken reading in your view? Because on page 45 of the transcript, the district court expressly says, in considering the 3553A factors, I find that the guideline range doesn't adequately account for this offense or the nature of the prior offense. So it's expressly framing this through its 3553A discretion. I think it was very clear about that. And essentially... But at one and the same time also saying, I'm going to go to the top end of that kind of other notional range, right? Like in the next breath. Right, but courts are entitled to look by analogy to the guidelines. And while that's not necessary, I think it was helpful here. And the reason for that is that the guidelines and the Sentencing Commission's expertise has determined under 2K2.1 that when a person possesses a firearm having already committed a crime of violence, that the violence inherent in that prior crime warrants an increase in the base offense level in the amount of six levels. And so even if the court is disagreeing essentially with the definition of a crime of violence and looking through to the actual offense, as this court has repeatedly acknowledged and encouraged it to do, the Sentencing Commission's judgment about the extent to which the violence impacts the factors that a court should consider, I think is still relevant and something the court can look to in determining the extent of the variance. Unless there are any other questions. Just briefly, Your Honor. So I think Judge Scudder actually points out what we are arguing in the sense of, yes, the district court did calculate the guideline range at 30 to 37 months, and then on page 46 of the transcript you hear the district court say, I believe he should be treated as if the sentencing range was 57 to 70 months. So why then would you, why do you, why are you so good at arguing procedural error? Your Honor, I think the issue here is that under 3553A he can take into account the history and the characteristics of the defendant. But what we have here, and where we think the argument and the problem is here, is that he gets, he says I'm going to treat you at 57 to 71, and now he's applying his 3553A factors within that range and kind of no longer considering the 30 to 37 months that is the actual guideline range in this case. That's where he applies the 3553A factors, is within that range. And that's what we think makes this an unreasonable decision by the judge. Thank you, Your Honors. Thank you. All right, thanks to both counsel. The case is taken under advisement.